IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BEN D. RABON, | ) CIVIL ACTION 4:07-792-HFF-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

    This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I.  PROCEDURAL HISTORY

    The plaintiff filed an application for DIB and SSI on September 14, 2004, alleging disability since August 24, 2004, due to spinal, rib, and right foot fractures (Tr. 56, 76, 81). His applications were denied at all administrative levels and upon reconsideration. Plaintiff filed a request for hearing which was held before an Administrative Law Judge (ALJ) on October 2, 2006. The ALJ

issued a decision denying plaintiff's claim for benefits on November 8, 2006 (Tr. 9-20). Plaintiff filed a Request for Review of the hearing decision which the Appeals Council denied on February 23, 2007 (Tr. 4-6). The ALJ's decision became the final decision of the Commissioner for purposes of judicial review.

## II. FACTUAL BACKGROUND

The plaintiff was born April 24, 1957, and was 49 years old as of the date of the ALJ's decision. (Tr. 47). Plaintiff has a ninth grade education and past work experience as a tree cutter.

## III. DISABILITY ANALYSIS

The plaintiff argues that the ALJ improperly evaluated the March 2, 2005, opinion of Dr. Gunter, the plaintiff's treating neurosurgeon.

In the decision of November 8, 2006, the ALJ found the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since his alleged onset date of August 24, 2004 (20 CFR 404.1520(b) and 416.920(b)).

3. The claimant has the following impairment: status post burst L2 fracture requiring surgery with fusion (20 CFR 404.1520(b) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently with the necessity to use a cane for ambulating; only occasional pushing and pulling with his lower extremities; the opportunity to sit or stand at will at the work station. He can never climb ladders, ropes, or scaffolds, balance, kneel, or crawl. He can occasionally climb ramps and stairs, stoop and crouch. He should not be exposed to hazardous work sites or vibration.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on April 24, 1957, and was 47 years old on the alleged disability onset date and is currently 49 years old, which is defined as a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

10. Considering the claimants age education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from August 24, 2004, through the date of this decision (20 CFR § 404.1520(g) and 416.920(g)).

(Tr. 14-20).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence[1] and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an

---

[1] Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can

5

perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV. MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein.

Plaintiff's claim for disability stems from an injury he experienced while working as a tree cutter on August 24, 2004. He fell approximately ten feet from a tree, landed on his feet, and then fell on his back. A chest CT scan showed that he had a severely comminuted compression fracture of the L2 vertebra, with a five to six millimeter retropulsion of a posterior fragment into the spinal canal, causing 50% spinal canal stenosis. It also showed mild displacement of the anterior fracture fragment; associated left laminal fracture at levels with bilateral transverse process fractures of L2 and L3; and left-sided transverse process fracture at L1. A right ankle x-ray showed a nondisplaced fracture at the base of the fifth metatarsal bone, as well as a fracture and displacement of the navicular bone. A thoracic spine x-ray showed spondylosis deformans, mild scoliosis, and acute right rib fracture. Brett Gunter, M.D., diagnosed L2 burst fracture and fracture of the navicular bone on the right as well as the fifth metatarsal bone. He admitted plaintiff to the hospital for further treatment and evaluation (Tr. 101-02, 107, 109-11, 114-15, 120). Plaintiff underwent a lumbar spine MRI later that day, which showed acute burst fracture at L2 with seven millimeter retropulsion into the spinal canal; no evidence of disc herniation or spinal canal hemorrhage; and moderately compressed conus medullaris (Tr. 122).

On August 25, 2004, plaintiff underwent a chest x-ray, which showed no active cardiopulmonary disease (Tr. 116, 119). A chest CT scan showed no pulmonary embolus; bibasilar atelectasis and small pleural effusions; possible left upper focal atelectasis, pulmonary contusion, or pneumonia; a transverse fracture of the upper sternum; nondisplaced left anterior and right posterior rib fractures; and no pneumothorax (Tr. 108, 117). An abdominal CT scan showed no acute process, an L2 burst fracture, splenic granuloma, and very mild gaseous distension in the bowels (Tr. 108, 117-18). A pelvic CT scan was unremarkable (Tr. 108, 118). Another lumbar spine MRI showed findings identical to those from the lumbar spine MRI study performed the previous day (Tr. 112).

On August 26, 2004, Stephen Watkins, M.D., examined plaintiff. He noted that plaintiff smoked one pack of cigarettes per day and had a chronic cough and symptoms that sounded like obstructive sleep apnea. He found that plaintiff was well-developed and overweight and did not appear to be in any acute distress. He diagnosed acute lumbar and other fractures, chronic obstructive pulmonary disease, hypoxia, and probable obstructive sleep apnea. He prescribed aerosolized bronchodilators and Pulmicort (a corticosteroid) (Tr. 103-04). On August 30, 2004, a chest x-ray showed new noncardiogenic vascular congestion with right pleural effusion and right lung base opacity likely representing edema, atelectasis, or pneumonia (Tr. 123).

On September 2, 2004, Dr. Gunter performed open reduction of plaintiff's L2 burst fracture; complete laminectomy of L2; foraminotomy of the L2, L3, and L1 nerve roots for decompression; pedicle screw instrumentation from L1 to L3 including the L2 vertebra; posterolateral arthrodesis, L1 to L2 and L2 to L3; and intraoperative fluoroscopy. After these procedures, Dr. Gunter noted that plaintiff's L2 burst fracture "was completely reduced" and "good instrumentation was achieved" (Tr.

105-06). The following day, a lumbar spine x-ray showed satisfactory appearance of the posterior fusion apparatus between L1 and L3 status post burst fracture at L2, and no malalignments through the operative segment (Tr. 125).

On September 8, 2004, Dr. Gunter noted that plaintiff was treated by Earl McFadden, M.D., during his hospital course for his right ankle fracture. He also noted that plaintiff was placed in a cast for his right ankle. He further noted that plaintiff began to mobilize slowly with a brace after his surgery and "steadily improved" throughout his hospitalization. Dr. Gunter stated that, by September 8, plaintiff was "doing much better," he was ambulating as far as the nurse's station, his wound looked good with no signs of infection, and he had good sensation and pallor to his lower extremities. Dr. Gunter discharged plaintiff with a front-wheel walker and bedside commode. He instructed plaintiff to wear his brace when out of bed and prescribed Percocet (a narcotic) and nicoderm patches (Tr. 99-100).

Plaintiff presented to Dr. McFadden on September 15, 2004, for follow-up. X-rays showed that the avulsion injury to plaintiff's fifth metatarsal base had a separation of about three to four millimeters and nondisplaced navicular fracture. Dr. McFadden prescribed a CAM walker (walking boot). He told plaintiff that he would "probably end up with a nonunion of the avulsion injury," but this "probably [wouldn't] cause him a problem." He noted that plaintiff was "actually not hurting much at all" and instructed him to bear weight as tolerated (Tr. 129).

On October 5, 2004, Dr. Gunter noted that plaintiff was walking with a cane. A lumbar spine x-ray showed fracture of L2 with posterior fixation from L1 down to L3; some "minimal" posterior sublaxation of the posterior aspect of L2 in relation to L1 and L3; and otherwise good vertebral alignment. Dr. Gunter noted that this x-ray "demonstrate[d] satisfactory appearance of [the]

interbody device and instrumentation" (Tr. 140-42). The following day, plaintiff returned to Dr. McFadden, who recommended that he remain in his CAM walker for an additional two weeks (Tr. 128). On October 27, 2004, plaintiff saw Dr. McFadden again, who noted x-rays which showed that his fracture of the fifth metatarsal base and navicular bone were "in good position and healed." He also noted that plaintiff ambulated well in a regular shoe. He had no restrictions for plaintiff and recommended that he undergo vocational rehabilitation (Tr. 128).

On December 7, 2004, Dr. Gunter saw plaintiff for persistent back and leg pain. He noted that "overall, [Plaintiff was] making improvement," and had intact lower extremity strength. Lumbar spine x-rays showed satisfactory appearance of plaintiff's lumbar construct. Dr. Gunter recommended that plaintiff remain in his back brace and stated that he was "unable to return to work for at least 12 full months from the original time of his injury" (Tr. 136).

On January 12, 2005, Robert Kukla, M.D., a State agency physician, reviewed the medical evidence and concluded that plaintiff's impairments were projected to not be "severe" by August 2005 (Tr. 155).

On January 18, 2005, plaintiff saw Dr. Gunter again with complaints of back and neck pain. Dr. Gunter found that plaintiff's lower extremity strength was intact. A lumbar spine x- ray demonstrated satisfactory appearance of the lumbar construct. He diagnosed "solid bony union at L1-2. At L2-3 there is no definitive evidence for solid bony union." Dr. Gunter restricted plaintiff to lifting of no more than ten pounds and instructed him to "wean out of his brace" and "increase his physical activities" (Tr. 135, 138-39).

On March 2, 2005, Dr. Gunter completed a "medical statement." He stated that plaintiff's injury was expected to last one year from January 18, 2005, the date he last saw him. He also said

that plaintiff could lift less than ten pounds occasionally. He noted that plaintiff did not require a hand-held assistive device for ambulation. He stated that plaintiff could sit and stand for one to two hours total in an eight-hour day; never climb; and occasionally balance, stoop, crouch, kneel, and crawl. He said that plaintiff was "not deemed medically able to return to [his] job" (Tr. 130-33). On March 15, 2005, plaintiff saw Dr. Gunter again with complaints of low back pain while walking. Dr. Gunter found that plaintiff had intact bilateral lower extremity strength. A lumbar spine x-ray showed satisfactory appearance of the interbody device and instrumentation and a "solid fusion" at L1 and L2-3. Dr. Gunter diagnosed L2 burst fracture. He said that plaintiff was to "remain out of work," but could possibly return to work in September 2005 (Tr. 134).

On July 15, 2005, Joyce Lewis, M.D., a State agency physician, reviewed the medical evidence, and found that plaintiff could perform the full range of medium work (Tr. 147-54).

## IV. ARGUMENTS

Plaintiff argues that the ALJ did not properly assess the opinion of his treating neurosurgeon, Dr. Gunter. Specifically, plaintiff argues that the ALJ erred in disregarding the limitations Dr. Gunter placed upon the plaintiff of no more than 1-2 hours a day of sitting. Defendant argues that the ALJ properly considered Dr. Gunter's opinion concluding that the overall evidence, including Dr. Gunter's own treatment notes, showed progressive improvement in plaintiff's condition.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight

and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight. In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will be taken into account. Id. An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The undersigned finds there is substantial evidence in the medical record to support the ALJ's decision. A review of the ALJ's decision reveals that the ALJ thoroughly discussed his reasoning for not giving controlling weight to Dr. Gunter's opinion regarding plaintiff's inability to sit for more than one to two hours and that plaintiff was "not deemed medically able to return to job." (Tr. 133). The ALJ stated the following in his decision:

> On August 24, 2004, the claimant fell approximately 10 feet from a tree, apparently landing on his feet and then falling onto his back. He suffered an L2 burst fracture, right foot fractures of the fifth metatarsal and navicular bone, and rib fractures.
>
> On September 2, 2004, he underwent lumbar surgery with laminectomy at the L2 level, decompression, and fusion with screws and rods from the L1 through the L3 levels. His foot fractures were treated with casting and a CAM walker. There was no evidence of complications such as pneumothorax or hemothorax associated with the rib fractures.
>
> . . . .

The claimant had good results from the spinal surgery with fusion. On January 18, 2005, he was instructed by his treating neurosurgeon, Dr. Brett Gunter, to begin to wean himself from the back brace. X-rays in late 2004 revealed very mild or minimal subluxation at the L2 level when compared to the L1 and L3 levels. Alignment was otherwise good. Subsequent x-rays on January 18, 2005, revealed stable findings with progressive bony union and by March 15, 2005, the claimant had achieved solid bony union at the L1-2 and the L2-3 levels. (Exhibit 4F).

At the time of the hospital admission immediately following the accident on August 24, 2004, the claimant showed good strength measured at 5/5 bilaterally in his upper and lower extremities. Deep tendon reflexes were symmetrical throughout with no long-tract signs. Sensation was intact to light touch and Patrick's sign was negative (exhibit 2F, page 4). Subsequent evaluations show no signs of neurological deficits and Dr. Gunter's progress notes consistently show good strength of the claimant's lower extremities with no noted impairment of his upper extremities.

. . . . . . . .

The evidence does not document strength deficits, circulatory compromise, neurological deficits, muscle spasms, fasciculations, fibrillations, or muscle atrophy or dystrophy that are often associated with long-standing, severe or intense pain or physical inactivity. The claimant was released from orthopedic care in the treatment of his right foot in October 2004. He testified at the October 2006 hearing that he had not required neurosurgical follow-up for his back problems since March 2005. He takes only over-the-counter medications with no indication of significant adverse side effects. Since the initial injury in August 2004, he has not required inpatient care or emergency treatments.

. . . . . .

Dr. Gunter has reported that he considers the claimant unable to return to his job prior to September 2005. In a statement dated March 2, 2005, he again reported that he had not released the claimant to return to his job. However, he reported that the claimant did not need a caretaker for regular care and did not require an assistive device for walking on level ground. He indicated that the claimant could lift 10 pounds with occasional balancing, stooping, crawling, kneeling, and crouching but no pushing, pulling, or climbing. Although Dr. Gunter suggested that the claimant should not be subjected to certain environmental conditions during recovery, he checked that there were no environmental restrictions caused by the claimant's impairments. Dr. Gunter pointed out no limitations of the claimant's upper extremities but noted that his pain interfered with sitting for longer than one to two hours during an eight-hour workday.

> My conclusions herein regarding the capacity for a slightly limited range of sedentary work are generally consistent with the conclusions noted by Dr. Gunter in his progress notes and in the medical statement. I agree with Dr. Gunter that the claimant could not be expected to return to his past relevant heavy work. Dr. Gunter's reports of ability to lift 10 pounds and walk on level ground without the use of a cane as well as the postural restrictions and no limitations of his upper extremities are generally consistent with the hypothetical situation provided to the vocational expert at a hearing.
>
> Dr. Gunter noted restrictions in sitting secondary to pain. The evidence shows that the claimant last saw Dr. Gunter on March 15, 2005 (Exhibit 4F, page 5). The overall evidence shows progressive improvement in the claimant's condition with no need for ongoing prescription pain medication, ongoing physical therapy, a back brace, neurologic or orthopedic follow-up, or other intensive treatment since March 2005. In view of the ongoing progressive improvements in the claimant's condition, the limitations set forth in the hypothetical situation to the vocational expert regarding opportunity for the claimant to sit or stand at will at the workstation are supported by the record and considered generally consistent with Dr. Gunter's earlier March 2005 statement of limited ability to sit secondary to pain. Overall, the evidence shows ongoing, progressive improvement in the claimants condition and level of pain, as discussed in more detail above in the credibility evaluation, compared to the time of Dr. Gunter's March 2, 2005, medical statement. Accordingly, the described limitations in sitting based on the claimant's allegations of pain in early March 2005, are given only minimal weight in the determination of the claimant's ability to sit with opportunity to stand at will by August 2005, 12 months after the onset of his acute problems. <u>Coffman v. Bowen</u>, 829 F.2d 514 (4th Cir. 1987).

(Tr. 15-18).

The undersigned finds that the ALJ has thoroughly discussed his reasoning for limiting the weight given to Dr. Gunter's opinion. The ALJ evaluated Dr. Gunter's March 2005 opinion that plaintiff was limited to sitting for one to two hours during an 8-hour workday and discussed in detail why he gave this opinion minimal weight. Further, based on the medical reports, it appears the last office visit with Dr. Gunter was on March 15, 2005. In this office note of March 15, 2005, Dr. Gunter found on physical exam that his strength was intact in the lower extremities bilaterally and the x-rays revealed "solid fusion at L1-2 and L2-3." (Tr. 134). Although Dr. Gunter noted that

plaintiff was to remain out of work, he also noted that "he may return to work possibly in September 2005." (Tr. 134). In the Medical Statement from Dr. Gunter dated March 2, 2005, he stated that he expected the duration of his illness to last "at least one year from date last seen- date last seen 1-18-05." (Tr. 130). The hearing before the ALJ was held on October 2, 2006. Based on the evidence before the court, plaintiff has not returned to Dr. Gunter or received any further intensive treatment since March 2005.

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989.

Based on the ALJ's decision, the undersigned finds that there is substantial evidence to support the decision of the ALJ in limiting the weight he gave to the March 2, 2005, report of Dr. Gunter.

## V.  CONCLUSION

Despite the plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this court concludes that the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed. Therefore, it is

RECOMMENDED that the Commissioner's decision be AFFIRMED.

                                          Respectfully submitted,

                                          s/Thomas E. Rogers, III
                                          Thomas E. Rogers, III
                                          United States Magistrate Judge

July 15, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**